**Kevin Gillen**
**Deputy Yellowstone County Attorney**
**Yellowstone County Courthouse, Room 701**
**P.O. Box 35025**
**Billings, Montana 59107-5025**
**(406) 256-2870**
**kgillen@co.yellowstone.mt.gov**

**Attorney for Derrek Skinner & Pedro Hernandez**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| MIGUEL ANGEL REYNAGA HERNANDEZ, | ) ) ) | Cause No. CV 18-40-BLG-SPW |
| Plaintiff, | ) ) | **PEDRO HERNANDEZ'S** |
| vs. | ) ) | **STATEMENT OF DISPUTED** |
| DEREK SKINNER *et al*, | ) ) ) | **FACTS** |
| Defendants. | ) ) | |
| _____ | ) | |

Pursuant to Rule 56.1(b) of the of the Local Rules of the United States District Court for the District of Montana, Pedro Hernandez files his statement of disputed facts in opposition to Miguel Hernandez's statement of undisputed facts.

### Facts Related to the Parties

1.      Defendant Derrek Skinner is a retired deputy sheriff of the Yellowstone County Sheriff's Office (YCSO). Dkt. 43, Skinner Aff. at 1. At the time the incident

in this lawsuit took place on October 2, 2017, Yellowstone County employed Derek Skinner as a deputy sheriff. *Id.* at 1-2.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

2.    Defendant Pedro Hernandez is a retired Yellowstone County Justice of the Peace. Dkt. 44, Hernandez Aff. at 1. At the time the incident in this lawsuit took place on October 2, 2017, Yellowstone County employed Defendant Hernandez as a Justice of the Peace. *Id*. at 1-2.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

## Defendants' Seizure of Mr. Reynaga

3.    On the morning of Monday, October 2, 2017, around 9:30 a.m., Mr. Reynaga accompanied his wife, Jana Reynaga (Ms. Reynaga) to the Yellowstone County Justice Court in Billings, Montana. Dkt. 18, Defs.' Answer at 3; Dkt. 44, Hernandez Aff. at 2; First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 1.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

4.    Ms. Reynaga intended to request a civil order of protection against a third party, Ms. Rachel Elizondo (Ms. Elizondo). Dkt. 18, Defs.' Answer at 3; Dkt. 44, Hernandez Aff. at 2; First Maltese Decl. Ex. D, Defs.' Resp. Pl.'s Reqs. For Adm. (RFA) 1; *Id*. Ex. C, Reynaga Hernandez Hr'g Tr. at 1.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

///

5.      Mr. Reynaga accompanied Ms. Reynaga to serve as a witness in order to support her request for a civil protection order. Dkt. 44, Hernandez Aff. at 2; First Maltese Decl. Ex. D, Defs.' Resp. RFA 1; *Id*. Ex. C, Reynaga Hernandez Hr'g Tr. at 1.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

6.      Defendant Hernandez presided over the hearing. Dkt. 44, Hernandez Aff. at 2.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

7.      At the beginning of the hearing, Defendant Hernandez instructed Mr. Reynaga and one other witness present at the hearing to wait outside the courtroom. Dkt. 44, Hernandez Aff. at 2; First Maltese Decl. Ex. D, Defs.' Resp. RFA 2; *Id*. Ex. C, Reynaga Hernandez Hr'g Tr. at 1.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

8.      After the hearing began, Ms. Reynaga provided testimony to the Justice Court describing the reasons she sought a protection order against Ms. Elizondo. First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 1-6; Dkt. 18, Defs.' Answer at 4; Dkt. 45-1, Reynaga Hernandez Audio R. 2:13-12:50.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

9.      Ms. Elizondo then presented her testimony, during which she stated that Mr. Reynaga "is not a legal citizen."  First Maltese Decl. Ex. C, Reynaga Hernandez

Hr'g Tr. at 10, 13; *Id*. Ex. D, Defs.' Resp. RFA 3; Dkt. 44, Hernandez Aff. at 2-3; Dkt. 45-1, Reynaga Hernandez Audio R. 17:40-48, 22:23-22:41.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute. "Not a legal citizen" is a vague term open to interpretation.  In the context of the conversation, it seems to have been meant to express Miguel Hernandez did not have the legal right to be present in the United States of America.  Either Miguel Hernandez had entered the United States of America without permission or entered the United States of America with permission, a visa, and overstayed the visa.  Miguel Hernandez is not a citizen of the United States of America.  Miguel Hernandez did illegally enter the United States of America.  Miguel Hernandez committed a crime when he entered the United States of America.

10.     Ms. Elizondo did not testify that Mr. Reynaga had unlawfully entered the United States nor describe his manner of entry to the United States. First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 10, 13; *Id*. Ex. D, Defs.' Resp. RFA 3; Dkt. 44, Hernandez Aff. at 2-3; Dkt. 45-1, Reynaga Hernandez Audio R. 17:40-48, 22:23-22:41.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Ms. Elizondo did not explicitly testify that Miguel Hernandez had illegally entered the United States of America.  Her use of the term "not a legal citizen" in the context of the conversation indicated that Miguel Hernandez did not have the legal right to be

present in the United States of America.  Either Miguel Hernandez had entered the United States of America without permission or entered the United States of America with permission, a visa, and overstayed the visa.  Miguel Hernandez is not a citizen of the United States of America.  Miguel Hernandez did illegally enter the United States of America.  Miguel Hernandez committed a crime when he entered the United States of America.

11.    At the conclusion of Ms. Elizondo's testimony, Defendant Hernandez observed, "What I'm hearing here are allegations about illegal immigrant." First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 29; *Id*. Ex. D, Defs.' Resp. RFA 3; Dkt. 45-1, Reynaga Hernandez Audio R. 45:38-45:43.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  "Illegal immigration" is a vague term open to interpretation.  In the context of the conversation, it seems to have been meant to express Miguel Hernandez did not have the legal right to be present in the United States of America.  Either Miguel Hernandez had entered the United States of America without permission or entered the United States of America with permission, a visa, and overstayed the visa.  Miguel Hernandez is not a citizen of the United States of America.  Miguel Hernandez did illegally enter the United States of America.  Miguel Hernandez committed a crime when he entered the United States of America.

///

12.     Defendant Hernandez's understanding is that someone who is "illegal" is a person "here without any permission; no visas, no authority just to be here." First Maltese Decl. Ex. E, Hernandez Dep. 25:14-15.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.   Pedro Hernandez believes illegal means without permission, like when Miguel Hernandez crossed into the United State of America without permission and committed a crime.

13.     Defendant Hernandez's understanding of the law is that it is a crime to be unlawfully present in the United States. First Maltese Decl. Ex. E, Hernandez Dep. 30:21-24.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.   Pedro Hernandez believe it is illegal for someone to be present in the United States of America who entered the United States of America without permission.

14.     Defendant Hernandez then requested that his staff contact the Yellowstone County Sheriff's Office regarding the "illegal immigrant" outside his courtroom. First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 29; *Id*. Ex. D, Defs.' Resp. RFA 4; Dkt. 44, Hernandez Aff. at 3; Dkt. 45-1, Reynaga Hernandez Audio R. 45:48-45:56.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.   Pedro Hernandez contacted the Yellowstone County Sheriff's Office to investigate Miguel Hernandez's immigration status.   Pedro Hernandez did not know whether Miguel

Hernandez had committed a crime with his presence in the United States of America. Pedro Hernandez did not know whether Miguel Hernandez had entered the United States without a permission, a crime, or overstayed a visa, not a crime. Pedro Hernandez would let the Yellowstone County Sheriff's Office determine the situation.

15.     He told his staff to "call me a deputy," noting, "I have two illegals sitting outside. I want them picked up."  First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 29; *Id*. Ex. D, Defs.' Resp. RFA 4; Dkt. 44, Hernandez Aff. at 3; Dkt. 45-1, Reynaga Hernandez Audio R. 45:48-45:56.

Undisputed. Pedro Hernandez and Derek Skinner do not dispute.  Pedro Hernandez used the term "picked up" loosely.  Usually, pick up means to arrest.  Pedro Hernandez did not mean for the Sheriff's Office to arrest Miguel Hernandez.  Pedro Hernandez meant for the Sheriff's Office to investigate Miguel Hernandez's immigration status.   Pedro Hernandez did not know whether Miguel Hernandez had committed a crime with his presence in the United States of America.  Pedro Hernandez did not know whether Miguel Hernandez had entered the United States without a permission, a crime, or overstayed a visa, not a crime.  Pedro Hernandez would let the Yellowstone County Sheriff's Office determine the situation.  Skinner did not interpret the term "pick up" to mean arrest Miguel Hernandez.  Skinner did not immediately arrest Miguel Hernandez.  Skinner investigated the situation and then

arrested Miguel Hernandez based on the request from Immigration and Customs Enforcement.

16.    Defendant Hernandez's staff then called the Yellowstone County Sheriff's Office and connected Defendant Hernandez to someone in the Sheriff's Office. First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 29.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

17.    Defendant Hernandez instructed the Yellowstone County Sheriff's Office to "[s]end me a couple of deputies. I have two illegal immigrants out in the hallway." First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 29; *Id*. Ex. D, Defs.' Resps. RFAs 4-5; Dkt. 44, Hernandez Aff. at 3; Dkt. 45-1, Reynaga Hernandez Audio R. 46:28-55.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

18.    Defendant Hernandez also emphasized that the deputies should arrive "as quickly as possible." First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 29; *Id*. Ex. E, Hernandez Dep. 40:21-41:9; Dkt. 45-1, Reynaga Hernandez Audio R. 46:28-55.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Pedro Hernandez wanted the Sheriff's Office to respond as soon as possible because Miguel Hernandez and the other man might flee if they knew the Sheriff's Office was about to investigation their immigration status.

19.    Defendant Hernandez acted only on the basis of information that Mr. Reynaga was "not a legal citizen," which Defendant Hernandez understood to mean that Mr. Reynaga "may be illegally in the United States of America."  First Maltese Decl. Ex. D, Defs.' Resp. RFA 7; see also *Id*. Defs.' Resps. RFA 3-6, 8; *Id*. Ex. E, Hernandez Dep. 38:6-13; Dkt. 44, Hernandez Aff. at 3.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Pedro Hernandez believed that Miguel Hernandez might not have the legal right to be present in the United States of America.  Either Miguel Hernandez had entered the United States of America without permission or entered the United States of America with permission, a visa, and overstayed the visa.  Miguel Hernandez is not a citizen of the United States of America.  Miguel Hernandez did illegally enter the United States of America.  Miguel Hernandez committed a crime when he entered the United States of America.

20.    After speaking on the phone with the Yellowstone County Sheriff's Office, Defendant Hernandez denied Ms. Reynaga's request for an order of protection. First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 31; Dkt. 44, Hernandez Aff. at 3.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

21.    Defendant Hernandez then ordered that Ms. Reynaga and Ms. Elizondo remain in the courtroom until a deputy from the Sheriff's Office arrived, and

threatened to "hold [them] in contempt and arrest [them] both" if they tried to leave. First Maltese Decl. Ex. C, Reynaga Hernandez Hr'g Tr. at 31; Dkt. 44, Hernandez Aff. at 3.

Disputed. Pedro Hernandez and Derrek Skinner dispute. Pedro Hernandez did not threaten them. Pedro Hernandez told them he would hold them in contempt. ECF No 44, p. 3.

22.     Defendant Hernandez sought to prevent Mr. Reynaga from leaving the courthouse before a deputy sheriff arrived. Dkt. 44, Hernandez Aff. at 3 ("I did not allow Jana Hernandez or Rachel Flagen to leave . . . I believed that they might tell Miguel Hernandez and Louis Elizondo that a deputy was on the way to investigate their immigration status and they would flee.").

Disputed. Pedro Hernandez and Derrek Skinner dispute. Pedro Hernandez's order that Ms. Reynaga and Ms. Elizondo not leave the courtroom did not prevent Miguel Hernandez from leaving the courthouse. The order prevented them from warning Miguel Hernandez that the Sheriff's Office was on its way to investigate his immigration status. *Id*.

23.     Meanwhile, Defendant Skinner was dispatched to respond to Defendant Hernandez's call from the courthouse. Defendant Skinner was told only that Defendant Hernandez called and that there were "two illegal immigrants outside his

courtroom that he wants picked up." Dkt. 46-4, Ouzts and Skinner Tel. R. 0:08-0:16; Dkt. 43, Skinner Aff. at 2.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute. Skinner did not interpret "pick up" to mean arrest. Skinner interpreted it to mean investigate. Skinner did not know the immigration status of Miguel Hernandez. Skinner did not know whether Miguel Hernandez had entered the United States of America without permission or entered the United States of America with permission, a visa, and overstayed the visa. Skinner's task was to determine what had occurred. Miguel Hernandez is not a citizen of the United States of America. Miguel Hernandez did illegally enter the United States of America. Miguel Hernandez committed a crime when he entered the United States of America.

24.   Around 10:36 am, shortly after another hearing began, Defendant Skinner arrived in response to Defendant Hernandez's phone call regarding Mr. Reynaga. Dkt. 44, Hernandez Aff. at 3-4; Dkt. 43, Skinner Aff. at 2; First Maltese Decl. Ex. H, Hanson Hr'g Tr. at 2-3; Dkt. 47-1, Hallway Sw. Cam. R. 10:36:44-10:36:51.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

25.   Defendant Skinner entered Defendant Hernandez's courtroom, and Defendant Hernandez informed Defendant Skinner that "[t]he information I have from them two under oath, they are illegal aliens," and that the "testimony from the

witness stand is that they are illegal." Dkt. 43, Skinner Aff. at 2; Dkt. 44, Hernandez Aff. at 4; First Maltese Decl. Ex. H, Hanson Hr'g Tr. at 3; *Id*. Ex. D, Defs.' Resp. RFA 7.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  "Illegal alien" is a vague term that could be used to describe someone who illegally entered the United States of America, a crime, or someone who legally entered the United States of America and overstayed a visa, not a crime.  Skinner did not know the immigration status of Miguel Hernandez.  Skinner did not know whether Miguel Hernandez had entered the United States of America without permission or entered the United States of America with permission, a visa, and overstayed the visa. Skinner's task was to determine what had occurred.  Miguel Hernandez is not a citizen of the United States of America.  Miguel Hernandez did illegally enter the United States of America.  Miguel Hernandez committed a crime when he entered the United States of America.

26.    Defendant Skinner's understanding was that Defendant Hernandez was instructing him to investigate Mr. Reynaga. Dkt. 43, Skinner Aff. at 2; First Maltese Decl. Ex. F, Skinner Dep. 21:18-22:3; Dkt. 44, Hernandez Aff. at 4 ("I told Skinner that I had heard testimony the two men in the hallway were illegally in the United States and I would like their immigration status investigated.").

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

27.    Defendant Skinner responded that he would "take care of it." First Maltese Decl. Ex. H, Hanson Hr'g Tr. at 3.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner meant "take care of it" in the sense he would investigation the situation, not some devious sense that he would do something nefarious.

28.    Defendant Hernandez also instructed Defendant Skinner to let him know the outcome of the investigation and that Defendant Skinner "may have to call immigration." First Maltese Decl. Ex. H, Hanson Hr'g Tr. at 3; *Id*. Ex. D, Defs.' Resp. RFA 10.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Pedro Hernandez offered a suggestion to Skinner as to the investigation that he might have to contact immigration to determine Miguel Hernandez's immigration status.

29.    Defendant Skinner's understanding was that Mr. Reynaga may be "illegally" in the United States. Dkt. 43, Skinner Aff. at 2; First Maltese Decl. Ex. F, Skinner Dep. 21:18-22:3, 22:14-20, 26:2-12, 29:4-10; Dkt. 43-1, YCSO Case Rep. at 13.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner believed Miguel Hernandez might be illegally in the United States of America. Skinner did not know the immigration status of Miguel Hernandez.  Skinner did not know whether Miguel Hernandez had entered the United States of America without

permission or entered the United States of America with permission, a visa, and overstayed the visa.  Skinner's task was to determine what had occurred.  Miguel Hernandez is not a citizen of the United States of America.  Miguel Hernandez did illegally enter the United States of America.  Miguel Hernandez committed a crime when he entered the United States of America.

30.     Defendant Skinner's understanding of the law is that an individual who is in the United States "illegally" is "someone who doesn't have any [immigration paperwork], or if they do, it's not proper." First Maltese Decl. Ex. F, Skinner Dep. 53:13-15.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Someone who enters the United States of America without permission does not have immigration paperwork and commits a crime.

31.     At 10:38 am, Defendant Skinner exited the courtroom and detained Mr. Reynaga, solely on the basis of the information that Defendant Hernandez had provided regarding Mr. Reynaga's suspected unlawful presence in the United States. First Maltese Decl. Ex. F, Skinner Dep. 28:14-29:10, 52:2-19; Dkt. 43, Skinner Aff. at 2; Dkt. 43-1, YCSO Case Rep. at 13; Dkt. 41, Defs.' Facts at 8 ("Initially, Skinner detained Miguel Hernandez because of the testimony at the hearing."); Dkt. 47-1, Hallway Sw. Cam. R. 10:38:26.

///

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Initially, Skinner detained Miguel Hernandez because the information conveyed to him by Pedro Hernandez that there had been testimony in his court that could be construed that Miguel Hernandez had entered the United States of America without permission, a crime, or had overstayed a visa, not a crime.  Skinner did not know the immigration status of Miguel Hernandez.  Skinner did not know whether Miguel Hernandez had entered the United States of America without permission or entered the United States of America with permission, a visa, and overstayed the visa.  Skinner's task was to determine what had occurred.  Miguel Hernandez is not a citizen of the United States of America.  Miguel Hernandez did illegally enter the United States of America. Miguel Hernandez committed a crime when he entered the United States of America.

32.    Defendant Skinner's detention of Mr. Reynaga commenced the moment that he engaged Mr. Reynaga after exiting the courtroom. First Maltese Decl. Ex. F, Skinner Dep. 52:2-12; Dkt. 47-1, Hallway Sw. Cam. R. 10:38:26-10:38:51.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.   When Skinner approached Miguel Hernandez outside of the courtroom, he detained Miguel Hernandez.  Skinner did not arrest Miguel Hernandez.  Skinner had an articulable reasonable suspicion that Miguel Hernandez might have committed a crime that allowed him to detain Miguel Hernandez to determine whether he had committed a crime.

33.    After the detention began, Defendant Skinner requested to see Mr. Reynaga's ID, and Mr. Reynaga produced an expired Mexican consulate ID. First Maltese Decl. Ex. F, Skinner Dep. 28:14-29:25; Dkt. 43, Skinner Aff. at 2-3; Dkt. 43-1, YCSO Case Rep. at 13; Dkt. 47-1, Hallway Sw. Cam. R. 10:38:45-10:38:51.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner requested Miguel Hernandez identify himself.  Miguel Hernandez identified himself with a United Mexican States identification card.   Miguel Hernandez did not identify himself with a United Mexican States passport with a visa from the United States of America.  Miguel Hernandez could not articulate his immigration status in the United States of America.   Miguel Hernandez did not seem fluent in English.   Because Miguel Hernandez identified himself with a United Mexican States identification card, could not articulate his immigration status and was not fluent in English, Skinner became more suspicious that Miguel Hernandez might have committed a crime with his presence in the United States of America. Miguel Hernandez is not a citizen of the United States of America.   Miguel Hernandez is a citizen of the United Mexican States.  Miguel Hernandez did illegally enter the United States of America.  Miguel Hernandez committed a crime when he entered the United States of America.

34.    Mr. Reynaga's ID did not indicate his immigration status. First Maltese Decl. Ex. F, Skinner Dep. 30:1-4.

///

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute. Miguel Hernandez's United Mexican States identification card did not indicate his immigration status in the United States. Miguel Hernandez's United Mexican States identification card did make Skinner more suspicious as to Miguel Hernandez's immigration status. Miguel Hernandez did not identify himself with a United Mexican States passport with a visa from the United States of America. Miguel Hernandez is not a citizen of the United States of America. Miguel Hernandez is a citizen of the United Mexican States. Miguel Hernandez did illegally enter the United States of America. Miguel Hernandez committed a crime when he entered the United States of America.

35.     Defendant Skinner questioned Mr. Reynaga only regarding his "immigration status" in the United States and did not question him regarding how he had entered the country. First Maltese Decl. Ex. F, Skinner Dep. 65:10-19.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute. Skinner questioned Miguel Hernandez as to his immigration status. Skinner did not know Miguel Hernandez's immigration status. Implicit in the concept of immigration status is whether a person has entered the United States of America without permission, a crime, or with permission and overstayed a visa, not a crime. Because Miguel Hernandez did not seem fluent in English, Skinner could not have an extensive conversation with Miguel Hernandez.

36.     After Defendant Skinner reviewed Mr. Reynaga's ID and questioned
him about his immigration status, Mr. Reynaga attempted to enter the courtroom.
Defendant Skinner prevented Mr. Reynaga from doing so and then placed him in
handcuffs. First Maltese Decl. Ex. F, Skinner Dep. 29:17-21, 30:5-22; Dkt. 43,
Skinner Aff. at 3; Dkt. 47-1, Hallway Sw. Cam. R. 10:40:10-10:41:53.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner
placed Miguel Hernandez in handcuffs to prevent any other physical confrontations
with him.

37.     Defendant Skinner searched Mr. Reynaga and found nothing suspicious
on him. Dkt. 18, Defs.' Answer at 5; Dkt. 43, Skinner Aff. at 3.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner
searched Miguel Hernandez for weapons.  Skinner did not find any weapons on him.
Skinner did not search him for suspicious ítems.

38.     At 10:45 am, Defendant Skinner escorted Mr. Reynaga to his patrol car
outside the courthouse and placed Mr. Reynaga in the car. First Maltese Decl. Ex. F,
Skinner Dep. 31:16-32:2; Dkt. 43, Skinner Aff. at 4; Dkt. 43-1 YCSO Case Rep. at
13; Dkt. 47-1, Hallway Sw. Cam. R. 10:44:57.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner
placed Miguel Hernandez in his vehicle to prevent any further attempts by Miguel
Hernandez to leave.

39.    Once at the patrol car, Defendant Skinner radioed the Yellowstone County Dispatch to run a warrants check on Mr. Reynaga. First Maltese Decl. Ex. F, Skinner Dep. 32:3-34:9; id. Ex. D, Defs.' Resp. RFA 15; Dkt. 43, Skinner Aff. at 4; Dkt. 46-2, Skinner and Ouzts Tel. R. 0:00-2:39; Dkt. 48, Ouzts Aff. at 2.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

40.    The warrants check returned no hits on Mr. Reynaga, including no hits from U.S. Immigration and Customs Enforcement (ICE) in the National Crime Information Center (NCIC) database. First Maltese Decl. Ex. F, Skinner Dep. 32:3-34:3; *Id*. Ex. D, Defs.' Resps. RFAs 16-18; Dkt. 43, Skinner Aff. at 4; Dkt. 46-2, Skinner and Ouzts Tel. R. 0:30-2:40; Dkt. 48, Ouzts Aff. at 2.

Disputed.  Pedro Hernandez and Derrek Skinner dispute. Skinner was directed by ICE to detain Miguel Hernandez. ECF No. 43, p. 5.

41.    At this point, Defendant Skinner's continuing basis—and only basis—to detain Mr. Reynaga was "the statement to the judge that [Mr. Reynaga] was here illegally." First Maltese Decl. Ex. F, Skinner Dep. 34:4-9.

Disputed.  Pedro Hernandez and Derrek Skinner dispute.  Skinner continued to detain Miguel Hernandez because he had not determined whether Miguel Hernandez had committed a crime with his presence in the United States of America.  Skinner had not determined whether Miguel Hernandez had entered the United States of America without permision, a crime, or entered with permission and overstayed a

visa, not a crime.  Skinner had the statement made in Pedro Hernandez's courtroom, an identification with a United Mexican States identification card, no identificaiton with United Mexican States Passport with a visa from the United States of America, an inablty to articulate his immigation status and an inablty to fluently speak English. ECF No. 43, p. 3.

42.     Defendant Skinner continued to detain Mr. Reynaga as he then asked the dispatcher to call ICE to see if ICE wanted Mr. Reynaga. The dispatcher and Defendant Skinner agreed to have an ICE agent call Defendant Skinner. First Maltese Decl. Ex. D, Defs.' Resps. RFAs 19-20; Dkt. 43, Skinner Aff. at 4; Dkt. 46-2, Skinner and Ouzts Tel. R. 2:40-3:06.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner contacted ICE to determine Miguel Hernandez's immigration status.  Skinner assumed ICE could cross reference Miguel Hernandez's name with the visas issued by the United States of America.  ICE could determine whether Miguel Hernandez had entered the United States without permission, a crime, or entered with permission and overstayed a visa, not a crime.

43.     The dispatcher then contacted ICE and an ICE Agent named David Frischmann contacted Defendant Skinner. Dkt. 48, Ouzts Aff. at 2; Dkt. 43, Skinner Aff. at 5; Dkt. 46-3, Ouzts and Frischmann Tel. R. 0:08-0:38.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

44.    ICE Agent Frischmann and Defendant Skinner then discussed Mr. Reynaga in two separate calls. Dkt. 43, Skinner Aff. at 5. Agent Frischmann did not indicate whether ICE wanted Defendant Skinner to arrest Mr. Reynaga during the first call. *Id*.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

45.    On the second call, Agent Frischmann asked Defendant Skinner to continue detaining Mr. Reynaga and to transport him to the Yellowstone County Detention Facility (YCDF). First Maltese Decl. Ex. F, Skinner Dep. 38:14-25; Dkt. 43, Skinner Aff. at 5; Dkt. 43-1, YCSO Case Rep. at 13.

Disputed.  Pedro Hernandez and Derrek Skinner dispute.  Skinner did not continue to detain Miguel Hernandez.  Based on the request by ICE to transport Miguel Hernandez to the Yellowstone County Detention Facility, Skinner believed that he had arrested Miguel Hernandez on behalf of ICE.  Skinner believed that ICE had probable cause to believe Miguel Hernandez had committed a crime. ECF No. 43, p. 5.

46.    At no point did Agent Frischmann indicate that Mr. Reynaga was wanted for committing a crime, including the crime of illegal entry. Instead, ICE indicated only that they suspected Mr. Reynaga might be unlawfully present. First Maltese Decl. Ex. F, Skinner Dep. 39:7-21; Dkt. 43-1 YCSO Case Rep. at 13.

///

Disputed.  Pedro Hernandez and Derrek Skinner dispute.  ICE with its request for Skinner to transport Miguel Hernandez to the Yellowstone County Detention Facility, indicated Miguel Hernandez had committed a crime.  There would have been no other reason for ICE to request Skinner to transport Miguel Hernandez to the Facility unless he committed a crime. ECF No. 43, p. 5.

47.    At 11:38 am, after Defendant's phone calls with Agent Frischmann, Defendant Skinner transported Mr. Reynaga to YCDF. First Maltese Decl. Ex. D, Defs.' Resp. RFA 22; *Id*. Ex. F, Skinner Dep. 39:22-25; Dkt. 43, Skinner Aff. at 5; Dkt. 43-1 YCSO Case Rep. at 13; Dkt. 47-4, Sidewalk Cam. R. 10:47:50-11:38:11.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

48.    Defendant Skinner had already detained Mr. Reynaga for approximately one hour at the time he began transporting Mr. Reynaga to YCDF. Dkt. 47-1, Hallway Sw. Cam. R. 10:38:26 (beginning investigation of Mr. Reynaga); Dkt. 47-4, Sidewalk Cam. R. 11:38:11 (pulling patrol vehicle out of courthouse parking lot).

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

49.    After transporting Mr. Reynaga to YCDF, Defendant Skinner booked Mr. Reynaga into the jail. First Maltese Decl. Ex. F, Skinner Dep. 40:11-21. Defendant Skinner also filled out a "remanding report" that listed Mr. Reynaga's "charge" as an "Immigration Hold." *Id*. Ex. G, Remanding Rep.; *Id*. Ex. F, Skinner Dep. 41:13-17.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

50.     Defendant Skinner booked Mr. Reynaga into YCDF around 12:01 p.m. on October 2, 2017. Dkt. 43, Skinner Aff. at 6; Dkt. 49-2, YCSO Inmate Activity Log.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

51.     About half an hour later, YCDF received an administrative form from ICE requesting that YCDF detain Mr. Reynaga. Dkt. 49-1, DHS Form I-203.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

52.     Although Defendant Skinner checked the "felony" box on the remanding report, Defendant Skinner had no reason to suspect that Mr. Reynaga had committed a crime. First Maltese Decl. Ex. F, Skinner Dep. 39:7-21.

Disputed.   Pedro Hernandez and Derrek Skinner dispute.   Skinner had a reasonable belief that Miguel Hernandez had committed a crime.   Skinner believed that ICE would not have requested him to transport Miguel Hernandez if Miguel Hernandez had not committed a crime.   ECF No. 43, p. 5.

53.     Defendant Skinner checked the "felony" box only to prevent YCDF from releasing him. First Maltese Decl. Ex. F, Skinner Dep. 42:9-12, 42:17-19 ("I just didn't want the booking clerk to let him go with no bond if he was there on a federal immigration hold. So I don't know if I needed to check that felony box or not.").

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

///

54.     Defendant Skinner believed Mr. Reynaga had committed an "immigration violation." First Maltese Decl. Ex. F, Skinner Dep. 42:7-21; *Id*. Ex. G, Remanding Rep.

Disputed.  Pedro Hernandez and Derrek Skinner dispute.  Skinner believed that Miguel Hernandez had committed a crime.  Skinner believed that ICE would not have requested he transport Miguel Hernandez to the Yellowstone County Detention Facility unless Miguel Hernandez had committed a crime.   ECF No. 43, p. 5.

55.     Mr. Reynaga was detained at YCDF for nearly 18 hours. He was transferred to ICE custody around 6:51 a.m. on October 3, 2017. Dkt. 49-2, YCSO Inmate Activity Log.

Disputed.  Pedro Hernandez and Derrek Skinner dispute.  Miguel Hernandez was incarcerated in the Yellowstone County Detention Facility on an order from ICE. ECF No. 43, p. 5.

### Defendants' Authority to Seize Mr. Reynaga

56.     As a judge of the Yellowstone County Justice Court, Defendant Hernandez did not have jurisdiction to act over matters involving immigration law. First Maltese Decl. Ex. E, Hernandez Dep. 22:22-25; Mont. Code Ann. §§ 3-10-301, 3-10-302, 3-10-303 (enumerating matters over which Justice Court may exercise jurisdiction); *Id*. § 3-10-111 ("[J]ustices' courts are courts of peculiar and limited jurisdiction.").

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.

57.    As a deputy sheriff of Yellowstone County, Defendant Skinner's "powers and duties [were] conferred by statute." First Maltese Decl. Ex. B, YCSO Policy Manual, Policy 2-1 § I.A. Under Montana law, the powers and duties of a county sheriff do not include enforcement of federal immigration laws. See Mont. Code Ann. § 7-32-2121.

Disputed.  Pedro Hernandez and Derrek Skinner dispute.  A deputy county sheriff has the authority to enforce all laws of the United States of America, including the crime of illegal entry into the United States of America. *See Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 464 (4th Cir. 2013); *Gonzales v. Peoria*, 722 F.2d 468, 475-76 (9th Cir. 1983) *overruled on other grounds*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

58.    Nothing in the Yellowstone County Sheriff's Policy Manual provides Defendants with express authority to enforce federal, civil immigration laws. First Maltese Decl. Ex. B, YCSO Policy Manual, Policy 0-0 § I.B, I.K (quoting Mont. Code Ann. § 7-32-2121).

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Pedro Hernandez and Skinner did not enforce any civil immigration law.  Pedro Hernandez requested an investigation of a possible violation of a federal criminal immigration law.  Skinner detained Miguel Hernandez on a possible violation of a federal criminal

immigration law and, eventually, at the request of ICE, arrested him on a federal criminal immigration violation.

59.    Defendant Skinner has never received any other guidance or instruction explaining when he might be authorized to enforce federal, civil immigration law. First Maltese Decl. Ex. F, Skinner Dep. 51:6-10.

Undisputed. Pedro Hernandez and Derrek Skinner do not dispute.  Skinner did not enforce any civil immigration law.  Skinner detained Miguel Hernandez on a possible violation of a federal criminal immigration law and, eventually, at the request of ICE, arrested him on a federal criminal immigration violation.

Dated this 10th day of April, 2019.

/s/ Kevin Gillen
Kevin Gillen
Deputy Yellowstone County Attorney

## Certificate of Service

I certify that on the date below I served a copy of Pedro Hernandez's Statement of Disputed Facts to:

 1,2   CM/ECF
\_\_\_\_\_Hand Delivery
\_\_\_\_\_Mail
\_\_\_\_\_Overnight Delivery Service
\_\_\_\_\_Fax
\_\_\_\_\_E-mail

1.      Clerk, U.S. District Court

2.      Shahid Haque
        Border Crossing Law Firm
        7 West 6th Avenue, Ste. 2A
        Helena, MT 59624

        Matt Adams, Leila Kang, Anne Recinos and Aaron Korthuis
        Northwest Immigration Rights Project
        615 Second Avenue, Ste. 400
        Seattle, WA 98104
        *Attorneys for Miguel Angel Reynaga Hernandez*

Dated this 10th day of April, 2019.

                                    /s/ Kevin Gillen
                                    Kevin Gillen
                                    Deputy Yellowstone County Attorney