**Kevin Gillen**
**Deputy Yellowstone County Attorney**
**Yellowstone County Courthouse, Room 701**
**P.O. Box 35025**
**Billings, Montana 59107-5025**
**(406) 256-2870**
**kgillen@co.yellowstone.mt.gov**

**Attorney for Derrek Skinner and Pedro Hernandez**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | | |
|---|---|---|
| MIGUEL ANGEL REYNAGA HERNANDEZ, | ) ) ) | Cause No. CV 18-40-BLG-SPW |
| Plaintiff, | ) ) | |
| vs. | ) ) | **DERREK SKINNER'S** |
| DERREK SKINNER *et al*, | ) ) | **COMBINED REPLY AND RESPONSE BRIEF** |
| Defendants. | ) ) | |

# Table of Contents

TABLE OF AUTHORITIES ................................................................................. 3-4

INTRODUCTION ............................................................................................... 5

PROCEDURAL HISTORY ................................................................................. 6

SUMMARY JUDGMENT STANDARD ............................................................ 11

GENUINE ISSUE OF MATERIAL FACT ........................................................ 11

JUDGMENT AS A MATTER OF LAW ............................................................ 13
    UNREASONABLE SEARCHES AND SEIZURES ........................................ 13
        LAW ............................................................................................... 13
        ANALYSIS ..................................................................................... 15
    QUALIFIED IMMUNITY ............................................................................ 21
        LAW ............................................................................................... 21
        ANALYSIS ..................................................................................... 22

PUNITIVE DAMAGES ...................................................................................... 26

DECLARATORY RELIEF ................................................................................. 28

CONCLUSION ................................................................................................... 29

CERTIFICATE OF COMPLIANCE .................................................................. 31

CERTIFICATE OF SERVICE ........................................................................... 32

# Table of Authorities

## <u>Cases:</u>

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)*……………………………………………………..……………...11

*City of El Cenizo, Texas v. Texas, 890 F.3d 164, 187–88 (5th Cir. 2018)*………20, 25

*Gonzales v. City of Peoria, 722 F.2d 468, 475-77 (9th Cir. 1983)*…………14, 18, 23

*Groh v. Ramirez, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting)*……………………………………………….……21

*Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999)*…….…..……..14, 19, 23

*Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)*………21

*Martinez-Medina v. Holder, 673 F.3d 1029, 1035-36 (9th Cir. 2011)*……..15, 18, 23

*Melendres v. Arpaio, 695 F.3d 990, 1000–01 (9th Cir. 2012)*………14, 18, 19, 20, 24

*Ochoa v. Campbell, 266 F. Supp. 3d 1237, 1257–58 (E.D. Wash. 2017)*…….……..25

*Ortega-Melendres v. Arpaio, 836 F. Supp. 2d 959, 975 (D. Ariz. 2011)*……………………………………………………………18, 19, 20, 24

*Pearson v. Callahan, 555 U.S. 223, 231, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)*...........................................................................21, 22

*Sanchez Ochoa v. Campbell, 716 F. App'x 741 (9th Cir. 2018)*………………………25

*Santoyo v. United States, No. 5:16-CV-855-OLG, 2017 WL 2896021 (W.D. Tex. June 5, 2017)*……………………………………………………….…....25

*Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)*……13, 14, 19, 20

*United States v. McCarty, 648 F.3d 820, 838–39 (9th Cir. 2011), as amended (Sept. 9, 2011)*……………………………………………………….……14

*United States v. Ramirez, 473 F.3d 1026, 1032 (9th Cir.2007)*………………*20, 24*

*United States v. Sharpe, 470 U.S. 675, 686–87, 105 S. Ct. 1568, 1575–76, 84 L. Ed. 2d 605 (1985)*………………………………………………............*13*

## **Amendments:**

4th Amendment of the United States Constitution…………………………....13

## **Statutes:**

8 U.S.C. § 1325(a)…………………………………………………...…11, 14

8 U.S.C § 1227…………………………………………………………..14
## **Rules:**

Fed.R.Civ,P. 56(a)...........................................................................................11

## Introduction

Miguel Hernandez characterizes what Derrek Skinner did as based solely on a suspicion he might have committed a civil immigration violation. What Skinner did was not based solely on a suspicion of a civil immigration violation. Skinner did not know Miguel Hernandez's immigration status. Skinner did not know whether Miguel Hernandez was illegally in the United States of America and, if he was, whether his presence was a civil or criminal immigration violation. Skinner did not know whether illegally in the United States of America meant Miguel Hernandez entered illegally, a criminal immigration violation, or entered legally and overstayed a visa, a civil immigration violation. Skinner investigated to determine Miguel Hernandez's immigration status. Skinner had a reasonable suspicion Miguel Hernandez might have committed a crime that allowed him to detain Miguel Hernandez for investigation. Skinner's suspicion Miguel Hernandez might have committed a crime increased based on the information he received during the investigation. When United States Immigration and Customs Enforcement, ICE, requested Skinner transport Miguel Hernandez to the Yellowstone County Detention Facility, it was reasonable for Skinner to believe ICE had information that established probable cause to arrest Miguel Hernandez. Skinner did not violate Miguel Hernandez's right against unreasonable searches and seizures with his detention and arrest.

Miguel Hernandez committed a criminal immigration violation. Miguel Hernandez entered the United States without permission, a crime. Skinner's suspicion Miguel Hernandez might have committed a criminal immigration violation was correct.

## Procedural History

Miguel Hernandez filed a complaint against Pedro Hernandez, a former Yellowstone County Justice of the Peace, and Derrek Skinner, a former Deputy Yellowstone County Sheriff. ECF No. 1. In the complaint, Miguel Hernandez alleges Pedro Hernandez violated his right against unreasonable searches and seizures under the 14th Amendment of the United States Constitution when he ordered the Yellowstone County Sheriff's Office arrest him for his presence in the United States of America. *Id*. at pp. 4-7, ¶¶ 19-32. In the complaint, he alleges Skinner violated his right against unreasonable searches and seizures when he detained and arrested him for his presence in the United States of America. *Id*. at pp. 7-11, ¶¶ 33-61.

Skinner filed a motion for summary judgment. ECF Nos. 39 & 40. He argued the Court should grant his motion because he did not violate Miguel Hernandez's right against unreasonable searches and seizures. ECF No. 40, pp. 5-8. He had reasonable suspicion to detain Miguel Hernandez to determine whether he had committed a crime – illegally entered the United States of America. *Id*. He had

information that someone testified in court Miguel Hernandez was illegally in the United States of America. *Id*. Illegally in the United States of America is a vague term that could refer to a person who illegally entered the United States of America or a person who overstayed a visa. Miguel Hernandez could not articulate his immigration status. *Id*. Miguel Hernandez identified himself with a United Mexican States identification card. *Id*. Skinner's suspicion that Miguel Hernandez committed a crime as indicated by his presence in the United States of America increased with this information. *Id*. He had probable cause to arrest Miguel Hernandez for a crime. When ICE requested him to transport Miguel Hernandez to the Yellowstone County Detention Facility, it was reasonable for Skinner to believe ICE had information that established probable cause to arrest Miguel Hernandez. *Id*. If he did violate Miguel Hernandez's right with his detention and arrest, he is entitled to qualified immunity. *Id*. at pp. 8-11. It was reasonable for him to believe that he could detain Miguel Hernandez based on the information he received. *Id*. It was reasonable for him to believe that he could arrest Miguel Hernandez based on the request from ICE to transport him to the Facility. *Id*. Skinner also argues punitive damages cannot be assessed against him. *Id*. at pp. 11-13. He did not act with malice, oppression or in reckless disregard. *Id*. Neither injunctive nor declaratory relief can be entered against him. *Id*. at pp. 13-14. He is no longer a deputy sheriff and injunctive relief would serve no purpose. *Id*. The monetary damages claim will determine whether he

violated Miguel Hernandez's right. *Id*. A declaratory relief claim is not necessary to determine whether he violated Miguel Hernandez's right. *Id*.

Miguel Hernandez filed a motion for summary judgment. ECF Nos. 55 & 56. He argues the Court should grant his motion and deny Pedro Hernandez and Skinner's motions because they violated his right against unreasonable searches and seizures. ECF No. 56, pp. 4-22. He argues Pedro Hernandez violated his right because he ordered Skinner to arrest him. *Id*. He argues Skinner violated his right because he did not have the authority to detain him or arrest him. *Id*. Skinner did not have a reasonable suspicion that he had committed a crime that would have allowed Skinner to detain him. *Id*. Skinner did not have probable cause to believe that he had committed a crime that would have allowed Skinner to arrest him. *Id*. He argues the testimony that he was illegally present in the United States of America could only be interpreted to mean he overstayed a visa to be in the United States of America, a civil immigration violation, not subject to arrest, and could not be interpreted to mean he illegally entered the United States of America, a criminal immigration violation, subject to arrest. *Id*. Because illegal presence in the United States of America only means he could have committed a civil immigration violation, a criminal investigation could not be conducted based on the allegation. *Id*. He argues Pedro Hernandez and Skinner are not entitled to qualified immunity. *Id*. at pp. 22-27. They violated his right against unreasonable searches and seizures. *Id*. They

should have known that their conduct would violate his right. *Id.* They should have

known illegal presence in the United States of America only means someone has

overstayed a visa, a civil immigration violation, not subject to arrest. *Id*. He argues

he is entitled to punitive damages from Pedro Hernandez and Skinner because they

acted with reckless disregard of the law with what they did. *Id*. at pp. 32-35. He does

not argue he is entitled to punitive damages because of malice or oppression. *Id.*

They should have known illegal presence in the United States of America only

means someone has overstayed a visa, a civil immigration violation, not subject to

arrest. *Id.* He argues he is entitled to declaratory relief against Pedro Hernandez and

Skinner because he believes it will deter further conduct. *Id*. at pp. 30-31. He does

not argue that he is entitled to injunctive relief. *Id.*

Skinner files this combined reply and response brief, a reply brief to Miguel

Hernandez's response brief and a response brief to Miguel Hernandez's support

brief for summary judgment. The Court should grant Skinner's motion and deny

Miguel Hernandez's motion. There is no genuine issue of material fact and Skinner

is entitled to judgment as a matter of law. Skinner did not violate Miguel

Hernandez's right against unreasonable searches and seizures when he detained and

arrested Miguel Hernandez. Skinner had a reasonable suspicion that Miguel

Hernandez might have committed a crime that allowed him to detain Miguel

Hernandez for investigation. Skinner's suspicion that Miguel Hernandez might have

committed a crime increased based on the information he received during the investigation. When ICE requested Skinner transport Miguel Hernandez to the Facility, it was reasonable for Skinner to believe ICE had information that established probable cause to arrest him. Even if Skinner violated Miguel Hernandez's right, it was reasonable for Skinner to believe that he could detain and arrest Miguel Hernandez and not violate his right against unreasonable searches and seizures. It is not clearly established that local law enforcement cannot investigate whether a person committed the crime of illegal entry in the United States as indicated by the person's illegal presence in the United States of America. The authority and logic of the cases have held so are dubious. It was reasonable for him to believe that he could detain Miguel Hernandez based on the information he received to investigate. It is not clearly established that local law enforcement cannot arrest a person at the request of ICE. It was reasonable for him to believe that he could arrest Miguel Hernandez based on the request from ICE to transport him to the Facility. Skinner is entitled to qualified immunity. Skinner did not act in reckless disregard of the law when he detained and arrested Miguel Hernandez. Skinner is not subject to punitive damages. Skinner reasonably investigated Miguel Hernandez. The monetary damages claim against Skinner will determine whether he violated Miguel Hernandez's right. There is no need for declaratory relief.

///

## Summary Judgment Standard

A court should grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ,P 56(a). A fact is genuine when based on the evidence a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). There must be sufficient evidence for a jury to return a verdict for the nonmoving party. *Id*. at 249-50. Merely colorable or insignificantly probative evidence does not create a genuine issue of material fact. *Id.* A fact is material when it might affect the outcome of the case under the applicable law. *Id*. at 248. The applicable substantive law identifies material facts. *Id.*

## Genuine Issue of Material Fact

There is no genuine issue of material fact as to what occurred. Miguel Hernandez committed a crime when he entered the United States of America without permission. Miguel Hernandez violated 8 U.S.C. § 1325(a) when he entered the United States of America. Miguel Hernandez did not enter the United States of America with a visa. Miguel Hernandez did not overstay a visa. Miguel Hernandez committed a crime with his presence in the United States of America. Miguel Hernandez's presence in the United States of America is evidence of the crime he committed. Pedro Hernandez heard testimony Miguel Hernandez might have

committed a crime. Pedro Hernandez heard testimony Miguel Hernandez was illegally in the United States of America. Pedro Hernandez did not know whether this meant Miguel Hernandez entered the United States of America without permission, a crime, or overstayed a visa, not a crime. Pedro Hernandez contacted the Yellowstone County Sheriff's Office and requested the Sheriff's Office to investigate the possible crime. Pedro Hernandez did not order the Sheriff's Office to arrest Miguel Hernandez. The Sheriff's Office, through Skinner, investigated the possible crime. Pedro Hernandez told Skinner that he heard testimony Miguel Hernandez might be illegally in the United States of America. Skinner detained Miguel Hernandez to investigate the possible crime. Skinner requested Miguel Hernandez identify himself. Miguel Hernandez identified himself with a United Mexican States identification card. Skinner asked Miguel Hernandez his immigration status. Miguel Hernandez could not explain his immigration status. Miguel Hernandez was not fluent in English. Skinner was not fluent in Spanish. Miguel Hernandez's identification with a United Mexican States identification card, his inability to explain his immigration status and his lack of fluency in English heighten Skinner's suspicion that Miguel Hernandez might have committed a crime as indicated by his presence in the United States of America. Skinner had an arrest warrants check performed on Miguel Hernandez. Miguel Hernandez did not have any arrest warrants. The failure of Miguel Hernandez to have an arrest warrant did

not clarify whether he had committed a crime, illegally entered the United States of America, or not committed a crime, overstayed a visa. Skinner contacted ICE to determine whether Miguel Hernandez had committed a crime as indicated by his presence in the United States of America. ICE communicated to Skinner that it wanted Miguel Hernandez arrested. Based on the request of ICE, Skinner arrested Miguel Hernandez and transported him to the Yellowstone County Detention Facility. Skinner assumed ICE had information that established probable cause for him to arrest Miguel Hernandez. Within half an hour of his arrival at the Facility, ICE provided the Facility with an order to detain Miguel Hernandez.

## Judgment as a Matter of Law

### *Unreasonable Searches and Seizures*

**Law**

A person has a right against unreasonable searches and seizures by the government. *U. S. Const. amend. IV.* The government violates a person's right against unreasonable searches and seizures when it detains the person for an investigatory stop without reasonable suspicion that the person is or has engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The government may detain a person for a reasonable period to determine whether the person is or has engaged in criminal activity. *See United States v. Sharpe*, 470 U.S. 675, 686–87, 105 S. Ct. 1568, 1575–76, 84 L. Ed. 2d 605 (1985).

If the government determines the person has engaged in criminal activity, it develops probable cause to believe the person committed a crime, it may arrest the person. *See United States v. McCarty*, 648 F.3d 820, 838–39 (9th Cir. 2011), as amended (Sept. 9, 2011). If the government determines the person has not engaged in criminal activity, it does not develop probable cause to believe the person committed a crime, it should release the person. *Id.* When the government detains a person it may perform a cursory search of the person for weapons if the government believes that person may be armed and dangerous. *Terry, supra.*

It is a crime to enter the United States of America without permission. 8 U.S.C. § 1325(a). A person who enters the United States of America without permission commits a crime. *Id.* The person is subject to criminal prosecution. *Id.* It is not a crime to stay in the United States of America longer than allowed after the person has entered with permission. 8 U.S.C. § 1227. A person who stays in the United States of America longer than allowed after the person has entered with permission does not commit a crime. *Id.* The person is subject to civil prosecution. *Id.* Local law enforcement agencies can enforce criminal immigration laws. *Gonzales v. City of Peoria*, 722 F.2d 468, 475 (9th Cir. 1983), overruled on other grounds, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). Absent an agreement with the United States, local law enforcement agencies cannot enforce civil immigration laws. *See Melendres v. Arpaio*, 695 F.3d 990, 1000–01 (9th Cir.

2012). Illegal presence in the United States of America by itself does not establish a person committed a crime. *Martinez-Medina v. Holder*, 673 F.3d 1029, 1035-36 (9th Cir. 2011). Illegal presence in the United States of America does not establish probable cause to arrest a person for illegal entry into the United States of America. *Id.* A person may have overstayed a visa that is a civil, not a criminal, violation. *Id.* Illegal presence with other information, though, might indicate a person has committed a crime with their illegal presence that would establish probable cause to arrest the person. *Id.*

**Analysis**

Skinner requests the Court grant him summary judgment that he did not violate Miguel Hernandez's right against unreasonable searches and seizures. ECF No. 40, pp. 5-8. Skinner argues he had a reasonable suspicion of criminal activity that allowed him to detain Miguel Hernandez and probable cause to arrest him. *Id*. Miguel Hernandez requests the Court deny Skinner summary judgment that Skinner did not violate his right and grant him summary judgment that Skinner did violate his right. ECF No. 56, pp. 4-22. Miguel Hernandez argues Skinner violated his right against unreasonable searches and seizures. *Id*. Skinner did not have a reasonable suspicion that he had engaged in criminal activity to detain him or probable cause to arrest him. *Id*. Skinner could not detain or arrest him based on the suspicion he might be illegally in the United States of America. *Id*. Illegal presence in the United

States of America is not a crime and is only indicative of a civil, not a criminal, immigration violation. *Id.*

Skinner did not violate Miguel Hernandez's right against unreasonable searches and seizures.

Skinner had a reasonable suspicion that Miguel Hernandez might have committed a crime that allowed him to detain Miguel Hernandez for investigation. Skinner knew an allegation had been made in court that Miguel Hernandez was illegally in the United States of America. Skinner did not know whether the allegation was true. Skinner did not know whether Miguel Hernandez was illegally in the United States of America. Skinner did not know Miguel Hernandez's immigration status. Skinner did not know whether Miguel Hernandez committed an immigration violation with his presence in the United States of America and, if he had, whether the violation would be civil or criminal. Skinner did not arrest Miguel Hernandez because of the allegation that he was illegally in the United States of America. Skinner began to investigate Miguel Hernandez because of the allegation. The allegation he was illegally in the United States of America was not enough to establish probable cause for Skinner to arrest Miguel Hernandez for illegal entry in the United States of America. The allegation could have been false. Miguel Hernandez could have been legally in the United States of America. He could have been a citizen of the United States of America. He could have had a visa that

allowed him to be present in the United States of America. Even if the allegation was true, he might not have committed a crime with his presence in the United States of America. He could have had an expired visa that once allowed him to be present in the United States of America. The allegation, though, allowed the reasonable inference that Miguel Hernandez might have committed the crime of illegal entry into the United States of America as indicated by his presence in the United States of America that allowed for an investigation.

As Skinner investigated, his suspicion that Miguel Hernandez might have committed a crime only increased. Miguel identified himself with a United Mexican States identification card. He did not identify himself with a driver's license or identification card from a state in the United States of America. He did not identify himself with a passport from the United States of America. He did not identify himself with a United Mexican States passport with a current visa from the United States of America. He did not identify himself with a United Mexican States passport with an expired visa from the United States. Miguel Hernandez could not explain his immigration status. He did not state he was a United States of America citizen. He did not state he was a United Mexican States citizen in the United States of America on a current visa. He did not state he was a United Mexican States citizen in the United States of America on an expired visa. He did not state he was a United Mexican States citizen who illegally entered the United States of America.

Miguel Hernandez did not appear fluent in English. Most citizens of the United States of America are fluent in English.

Based on the testimony, the identification with a United Mexican States identification card, the inability to articulate his immigration status and his lack of fluency in English, Skinner contacted ICE to determine Miguel Hernandez's immigration status. Skinner assumed ICE could determine Miguel Hernandez's immigration status through a cross reference of his name with the visas issued by the United States of America. ICE requested Skinner transport Miguel Hernandez to the Yellowstone County Detention Facility. Based on the request by ICE to transport Miguel Hernandez, Skinner assumed ICE had information that established probable cause to arrest Miguel Hernandez and Miguel Hernandez had committed a criminal immigration violation.

According to Miguel Hernandez, Skinner could not detain him to investigate his immigration status based on an allegation he was illegally in the United States of America. *See Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 975 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012); *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012). This premise is questionable. It is undisputed that illegal presence in the United States of America is not enough to arrest someone for illegal entry into the United States of America. *See Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011); *Gonzales v. City of Peoria*,

722 F.2d 468, 476–77 (9th Cir. 1983), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). There could be a non-criminal reason why a person is illegally in the United States of America. *Id.* The person could have overstayed his visa. *Id.* A person who overstays a visa is not subject to incarceration for punishment. *Id.* The person is subject to deportation. *Id.* Illegal presence in the United States of America, though, raises a reasonable belief that the person may have illegally entered the United States of America. Illegal presence can only occur two ways, either a person illegally enters or legally enters and overstays.

The proposition made in *Ortega-Melendres* and *Melendres* illegal presence in the United States is not enough to have a reasonable suspicion a person illegally entered the United States to allow detention of the person to investigate is not well founded. *Ortega-Melendres* and *Melendres* cite to *Martinez-Medina* and *Gonzales* for the proposition. *Martinez-Medina* and *Gonzales* do not hold this proposition. *Martinez-Medina* and *Gonzales* held illegal presence in the United States is not enough to have probable cause to arrest a person for illegal entry into the United States. *Melendres* also cites to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), for the proposition. *Terry* does not stand for this proposition. Nor can this proposition be logically deduced from *Terry*. A person can only be illegally in the United States of America if the person illegally entered or legally entered and overstayed. Illegal presence in the United States of America is an indication of a

possible crime. It might not be a crime, but is an indication of a possible crime that would allow detention for investigation. *Ortega-Melendres* and *Melendres* do not follow the general rule of detentions that there only needs to be a reasonable belief that a crime might have been committed for a detention. *Ortega-Melendres* and *Melendres* have created a special rule for the investigation of illegal entry into the United States not founded on precedent or logic.

Under the collective knowledge doctrine, a court can impute to a police officer who actually performs a stop or arrest the knowledge of the police officer who directed the police officer to perform the stop or arrest. *United States v. Ramirez,* 473 F.3d 1026, 1032 (9th Cir.2007). The police officer who actually performs the stop or arrest does not need to have the personal knowledge of the reasonable suspicion of criminal activity to perform the stop or probable cause to perform the arrest. *Id.* The police officer who performs the stop or arrest can rely on the police officer who directed the stop or arrest has knowledge of the reasonable suspicion of the criminal activity to perform the stop or probable cause to perform the arrest. *Id.* The collective knowledge doctrine is applicable to local law enforcement who perform actions at the direction of ICE. *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 187–88 (5th Cir. 2018). Under the collective knowledge doctrine, when ICE requested Skinner transport Miguel Hernandez to the Facility, that Skinner interpreted to mean ICE wanted him to arrest Miguel Hernandez,

Skinner could rely on ICE to have probable cause for him to arrest Miguel Hernandez.

Skinner had a reasonable suspicion to detain and probable cause to arrest.

## *Qualified Immunity*

### Law

Qualified immunity protects government officials from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Qualified immunity shields an official from liability even if the official's actions resulted from a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting). The purpose of qualified immunity is to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.* Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). When a court determines whether an official is entitled to qualified immunity, it should consider (1) whether the official has violated a constitutional

right and (2) whether the right was clearly established at the time of the official's alleged violation. *Pearson*, 555 U.S. at 232, 129 S.Ct. 808. A court should deny qualified immunity to an official when (1) the official has violated a constitutional right and (2) the right at issue was clearly established at the time of the violation that a reasonable official would have understood his conduct in that particular situation would violate the right. *Id.*

**Analysis**

Skinner requests the Court grant him summary judgment as to qualified immunity. ECF No. 40, pp. 8-11. Skinner did not violate Miguel Hernandez's right against unreasonable searches and seizures and, even if he did, it was reasonable for him not to know his conduct would violate Miguel Hernandez's right. *Id*. Miguel Hernandez requests the Court deny Skinner summary judgment as to qualified immunity. ECF No. 56, pp. 22-27. Miguel Hernandez argues the Court should not find Skinner is entitled to qualified immunity. *Id.* Skinner violated his right against unreasonable searches and seizures when Skinner detained and arrested him for a civil immigration violation and Skinner should have known his detention and arrest would violate his right. *Id.*

Skinner is entitled to qualified immunity. Skinner did not violate Miguel Hernandez's right against unreasonable searches and seizures and, even if he did, it was reasonable for him to believe he could do what he did and not violate Miguel

Hernandez's right. There is legal authority local law enforcement cannot detain a person based on illegal presence in the United States to determine whether the person illegally entered the United States. The legal authority is not clearly established. Skinner had a reason to detain Miguel Hernandez that developed into reasons as the detention continued and could rely on the request from ICE to transport Miguel Hernandez that ICE had information to establish probable cause to arrest Miguel Hernandez. Skinner did not initiate the detention based solely on a suspicion of a civil immigration violation. Skinner did not know whether an immigration violation had occurred and, if it had, whether it was civil or criminal. Skinner contacted ICE to determine whether a violation had occurred and whether it was civil or criminal. There is no legal authority that local law enforcement violates a person's right against unreasonable searches and seizures when they contact ICE to determine a person's immigration status and act at the request of ICE to arrest the person.

There is established legal authority local law enforcement cannot arrest a person solely for illegal presence in the United States of America. *Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011); *Gonzales v. City of Peoria*, 722 F.2d 468, 476–77 (9th Cir. 1983), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). A person illegally in the United States of America may not have committed a crime. *Id.* The person may have overstayed a

visa. *Id.* There is legal authority local law enforcement cannot detain a person solely because of illegal presence in the United States of America to determine whether the person illegally entered the United States of America, a crime. *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 975 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012); *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012). This is not established legal authority. The legal authority is not based on precedent or logic. The legal authority cites the cases that held local law enforcement cannot arrest a person solely for illegal presence in the United States of America as authority local enforcement cannot detain a person solely because of illegal presence in the United States of America to determine whether they illegally entered the United States of America, a crime. The legal authority cites *Martinez-Medina* and *Gonzales*. The legal authority is not logical. A person can only be illegally in the United States of America if the person illegally entered or legally entered and overstayed a visa. Information that a person is illegally in the United States of America logically leads to the possibility the person may have illegally entered the United States of America.

There is established legal authority a court can impute to a police officer who actually performs a stop or arrest the knowledge of the police officer who directed the police officer to perform the stop or arrest. *United States v. Ramirez,* 473 F.3d 1026, 1032 (9th Cir.2007). The police officer who actually performs the stop or

arrest does not need to have the personal knowledge of the reasonable suspicion of criminal activity to perform the stop or probable cause to perform the arrest. *Id.* The police officer who performs the stop or arrest can rely on the police officer who directed the stop or arrest has knowledge of the reasonable suspicion of the criminal activity to perform the stop or probable cause to perform the arrest. *Id.* This is the collective knowledge doctrine. *Id.* The collective knowledge doctrine is applicable to local law enforcement who perform actions at the direction of ICE. *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 187–88 (5th Cir. 2018). In *City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018), the Fifth Circuit Court of Appeals abrogated *Santoyo v. United States*, No. 5:16-CV-855-OLG, 2017 WL 2896021 (W.D. Tex. June 5, 2017), the case the court relied on in *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1257–58 (E.D. Wash. 2017), appeal dismissed as moot *sub nom. Sanchez Ochoa v. Campbell*, 716 F. App'x 741 (9th Cir. 2018), to find the collective knowledge doctrine is not applicable to local law enforcement who perform actions at the direction of ICE.

It was reasonable for Skinner to believe the general rule as to detentions applied to Miguel Hernandez. As long as Skinner had some rational reason to believe Miguel Hernandez might have committed a crime, he could detain Miguel Hernandez to investigate the suspected crime. Skinner had a rational reason to believe Miguel Hernandez might have committed a crime. Skinner received

information Miguel Hernandez was illegally in the United States of America. Miguel Hernandez's illegal presence in the United States of America is indicative he might have illegally entered the United States of America.

It was reasonable for Skinner to believe he could rely on ICE that it had probable cause to arrest Miguel Hernandez based on the request from ICE to transport him to the Facility. Law enforcement agencies constantly rely on information provided to them by other law enforcement agencies to act.

### Punitive Damages

Skinner requests the Court grant him summary judgment on Miguel Hernandez's punitive damages claim. ECF No. 40, pp. 11-13. Skinner argues he did not act with malice, oppression or in reckless disregard as to Miguel Hernandez. *Id*. Miguel Hernandez requests the Court deny Skinner summary judgment on his punitive damages claim and grant him summary judgment on the claim. ECF No. 56, pp. 32-35. Miguel Hernandez argues Pedro Hernandez and Skinner recklessly disregarded the law when they detained and arrested him solely on suspicion of a civil, not a criminal, immigration violation. *Id*. This reckless disregard allows him to receive punitive damages. *Id*. Miguel Hernandez does not allege he is entitled to punitive damages because Skinner acted with malice or oppression. *Id*.

Skinner did not recklessly disregard the law that would allow Miguel Hernandez to receive punitive damages. Skinner did not detain and arrest Miguel

Hernandez solely on the suspicion of a civil immigration violation. Skinner did not know Miguel Hernandez's immigration status. Skinner did not know whether Miguel Hernandez had committed an immigration violation and, if he had, whether it was a civil or criminal violation. Based on the information Skinner received from Pedro Hernandez that Miguel Hernandez was illegally in the United States of America, Skinner did not know whether Miguel Hernandez had committed an immigration violation, and, if he had, whether Miguel Hernandez had overstayed his permission to be in the United States of America, a civil violation, or entered the United States of America without permission, a criminal violation. Based on the information Skinner received from Pedro Hernandez, Skinner could detain Miguel Hernandez to determine whether Miguel Hernandez had committed a crime, illegally entered the United States of America, as indicated by his presence in the United States of America. Skinner's suspicion of a criminal immigration violation increased based on Miguel Hernandez's identification by a United States Mexican identification card, an inability to articulate his immigration status and his inability to speak English. Skinner contacted ICE who requested him to transport Miguel Hernandez to the Facility. Skinner assumed ICE had some authority, probable cause to believe Miguel Hernandez had committed a crime, for the request to transport Miguel Hernandez to the Facility. Under the facts, Skinner's detention and arrest of Miguel Hernandez was not a reckless disregard of the law.

What would have been a reckless disregard of the law would have been for Skinner to arrest Miguel Hernandez based solely on the testimony he had illegally entered the United States of America without an investigation. If Skinner had arrested him solely on the testimony, it would have been reckless disregard. This is not what happened. Skinner detained him based on this information for investigation. If Skinner had arrested him on the testimony, his identification card, his inability to articulate his immigration status and his inability to speak English; it might have been reckless disregard. This is not what happened. Skinner continued to detain him based on this information for investigation. Skinner arrested him when ICE requested the arrest. This is what happened. Again, Skinner's detention and arrest was not a reckless disregard of the law.

## Declaratory Relief

Skinner requests the Court grant him summary judgment on Miguel Hernandez's injunctive and declaratory relief claim. ECF No. 40, pp. 13-14. Skinner argues injunctive and declaratory relief would serve no purpose. *Id*. He is no longer a deputy sheriff and the decision on the monetary damages claim will determine whether he violated Miguel Hernandez's right against unreasonable searches and seizures. *Id*. Miguel Hernandez requests the Court deny Skinner summary judgment on his declaratory relief claim and grant him summary judgment on the claim. ECF No. 56, pp. 30-31. Miguel Hernandez argues he would like declaratory relief to

establish what Skinner did violate his right. *Id*. Miguel Hernandez does not seek injunctive relief. *Id*. Miguel Hernandez tacitly acknowledges injunctive relief against Skinner would serve no purpose. *Id*. Miguel Hernandez has not provided any explanation why separate declaratory relief is necessary to determine whether Skinner violated his right when the decision on the monetary claim will determine whether Skinner violated his right. The basis of the monetary and declaratory claim are the same alleged past constitutional violation. It seems somewhat contradictory that Miguel Hernandez would need declaratory relief to establish what Skinner did violate his right, when, according to Miguel Hernandez, what Skinner did clearly violated his right that should deny Skinner qualified immunity.

## Conclusion

The Court should grant Skinner's motion for summary judgment and deny Miguel Hernandez's motion for summary judgment. There is no genuine issue of material fact and Skinner is entitled to judgment as a matter of law. Skinner did not violate Miguel Hernandez's right against unreasonable searches and seizures. Skinner had a reasonable suspicion that Miguel Hernandez might have committed a crime that allowed him to detain Miguel Hernandez for investigation. Skinner's suspicion that Miguel Hernandez might have committed a crime increased based on the information he received during the investigation. When ICE requested Skinner to transport Miguel Hernandez to the Facility, it was reasonable for Skinner to

believe ICE had information that established probable cause to arrest him. Skinner is entitled to qualified immunity. Even if Skinner violated Miguel Hernandez's right, it was reasonable for him to believe he could do what he did, detain and arrest, and not violate Miguel Hernandez's right. Skinner had a reasonable suspicion to investigate and reasonably believed that ICE had probable cause to arrest Miguel Hernandez when it requested him to transport Miguel Hernandez to the Facility. Illegal presence is an indication of a possible crime that allows for investigation. The collective knowledge doctrine applies to immigration violations. Skinner is not subject to punitive damages. Skinner did not act with reckless disregard for the law when he detained and arrested Miguel Hernandez. Skinner methodically investigated whether Miguel Hernandez had committed a criminal immigration violation. When ICE requested Skinner transport Miguel Hernandez to the Facility, it was reasonable for Skinner to believe ICE had information that established probable cause to arrest him. Skinner is not subject to declaratory relief. Miguel Hernandez's claim for monetary relief will establish whether Skinner violated his right.

Dated this 10th day of April, 2019.

/s/ Kevin Gillen
Kevin Gillen
Deputy Yellowstone County Attorney

## Certificate of Compliance

Pursuant to Civil Local Rule 7.1(d)(2)(E), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Word 2016 is 6,300 words, excluding Certificate of Service and Certificate of Compliance.

Dated this <u>10th</u> day of April, 2019.

<u>/s/ Kevin Gillen</u>
Kevin Gillen
Deputy Yellowstone County Attorney

## Certificate of Service

I certify that on the date below I served a copy of the attached Derrek Skinner's Combined Reply and Response Brief on the following people by the following means:

 1, 2   CM/ECF
\_\_\_\_\_Hand Delivery
\_\_\_    Mail
\_\_\_\_\_Overnight Delivery Service
\_\_\_\_\_Fax
\_\_\_\_\_E-mail

1.      Clerk, U.S. District Court

2.      Shahid Haque
        Border Crossing Law Firm
        7 West 6th Avenue, Ste. 2A
        Helena, MT 59624

        Matt Adams, Leila Kang, Anne Recinos and Aaron Korthuis
        Northwest Immigration Rights Project
        615 Second Avenue, Ste. 400
        Seattle, WA 98104
        *Attorneys for Miguel Angel Reynaga Hernandez*

Dated this 10th day of April, 2019.

                                    /s/ Kevin Gillen
                                    Kevin Gillen
                                    Deputy Yellowstone County Attorney