IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

MAY 29 2019

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| MIGUEL ANGEL REYNAGA HERNANDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>DERREK SKINNER, in his individual capacity, and PEDRO HERNANDEZ, in his individual capacity,<br><br>Defendants. | CV 18-40-BLG-SPW<br><br>OPINION AND ORDER |

Plaintiff Miguel Angel Reynaga Hernandez seeks compensatory and punitive damages under 42 U.S.C. § 1983 from Defendants Derrek Skinner and Pedro Hernandez. Miguel also seeks a declaratory judgment that the Defendants' actions were illegal. Before the Court are cross-motions for summary judgment on Miguel's claims.

I. **Undisputed facts**

On October 2, 2017, Miguel accompanied his wife to Yellowstone County Justice Court in Billings, Montana. (Doc. 64 at 2). His wife had a hearing on her request for an order of protection against a third party and Miguel planned to testify on her behalf. (Doc. 64 at 3). Pedro Hernandez, a Justice of the Peace at the time, presided over the hearing. (Doc. 64 at 1-3). Before the hearing began,

1

Justice Hernandez excluded Miguel and other witnesses from the court room so they wouldn't hear the testimony. (Doc. 64 at 3).

During the hearing, the third party against whom the order of protection was sought testified that Miguel was "not a legal citizen." (Doc. 64 at 3-4). The third party made a similar accusation against another witness. When the third party's testimony concluded, Justice Hernandez stated "What I'm hearing here are allegations about illegal immigrant [sic]." (Doc. 64 at 5). Justice Hernandez halted the hearing and told his staff to "call me a deputy. I have two illegals sitting outside. I want them picked up." (Doc. 64 at 7). On the phone a few seconds later, Justice Hernandez told the Sheriff's Office to "send me a couple of deputies. I have two illegal immigrants out in the hallway . . . they are in the hall. Get them here as quickly as possible." (Doc. 64 at 8). Justice Hernandez ordered Miguel's wife to remain in the courtroom to prevent her from telling Miguel a deputy was coming to investigate his immigration status. (Doc. 64 at 9-10).

Meanwhile, the Sheriff's Office dispatch told Derrek Skinner, a deputy sheriff at the time, that Justice Hernandez called about "two illegal immigrants outside his courtroom that he wants picked up." (Doc. 64 at 10-11). When Deputy Skinner entered Justice Hernandez's courtroom, Justice Hernandez said "the information I have from them two under oath, they are illegal aliens," to which Deputy Skinner responded "I'll take care of it." (Doc. 64 at 11-13). Justice

2

Hernandez responded "see what happens. If you guys take them, let me know please," and suggested "you may have to call immigration . . . their testimony from the witness stand is they are illegal." (Doc. 64 at 11-13).

Deputy Skinner stepped into the hallway, detained Miguel, and asked him for identification and about his immigration status. (Doc. 64 at 14-15). Miguel gave Deputy Skinner an expired Mexican consulate ID but could not answer Deputy Skinner's questions about immigration because Miguel was not fluent in English. (Doc. 64 at 16-17). When Miguel attempted to enter the courtroom to see his wife, Deputy Skinner blocked and handcuffed him. (Doc. 64 at 18). Deputy Skinner searched Miguel's person and, finding nothing suspicious, walked Miguel outside the courthouse and placed him into a patrol car. (Doc. 64 at 18). While Miguel sat handcuffed in the patrol car, Deputy Skinner ran a warrants check. (Doc. 64 at 19). When the warrants check came back clean, Deputy Skinner asked dispatch to see if Immigration and Customs Enforcement "wanted him." (Doc. 64 at 19). An ICE agent contacted Deputy Skinner on the phone and asked Deputy Skinner to transport Miguel to the Yellowstone County Detention Facility. (Doc. 64 at 18).

Miguel remained in ICE custody, being transported amongst various detention facilities, while a deportation proceeding was initiated. After three months, the Department of Homeland Security dismissed its deportation

3

proceeding against Miguel. (Doc. 59). Miguel filed this § 1983 action against Justice Hernandez and Deputy Skinner, claiming they deprived him of his constitutional rights under color of state law and requesting compensatory and punitive damages and a declaratory judgment that Justice Hernandez and Deputy Skinner acted illegally.

## II. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to

establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**III. Discussion**

The parties moved for summary judgment on the § 1983 claims, punitive damages, and the request for declaratory judgment.

**A.  § 1983 claims**

Section 1983 provides a tort remedy for persons whose constitutional or statutory rights have been violated by state officials acting "under color of law." *Whalen v. McMullen*, 907 F.3d 1139, 1145 (9th Cir. 2018) (citing 42 U.S.C. § 1983). To prove a § 1983 claim, the plaintiff must show (1) his constitutional or statutory rights were violated by (2) a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Overlapping these elements is the protection afforded public officials against § 1983 claims, known as qualified immunity. Qualified immunity shields public officials from suit unless the plaintiff can show (1) a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the violation. *Whalen*, 907 F.3d at 1144-1146 (citing *Person v. Callahan*, 555 U.S. 223, 232 (2009)). When, as here, the parties agree the public officials were acting under color of law, the qualified immunity determination necessarily resolves § 1983 liability because qualified immunity and § 1983 share the same first element.

Justice Hernandez does not assert he is entitled to absolute judicial immunity. *See Briscoe v. LaHue*, 460 U.S. 325, 334 (1983). The Court therefore only examines whether Justice Hernandez is entitled to qualified immunity.

### 1. Whether there was a violation of a constitutional right

The Fourth Amendment provides people the right to be free from unreasonable seizures. A seizure occurs when a police officer, through coercion, "physical force, or a show of authority, in some way restricts the liberty of a person." *U.S. v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004). A person's liberty is restrained when, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Washington*, 387 F.3d at 1068 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

There are generally two kinds of seizures: brief investigative stops and arrests. *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995). A brief investigative stop, sometimes called a *Terry* stop, occurs when a police officer stops someone for a limited duration to ask questions. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). A brief investigative stop requires reasonable suspicion, defined as "a particularized and objective basis for suspecting the particular person stopped of

criminal activity." *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014) (citing *Terry*, 392 U.S. at 21-22).

An arrest is a more significant intrusion than a brief investigative stop. Courts often struggle to explain the difference between a *Terry* stop and an arrest, but perhaps the best definition of an arrest is a "restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988). To determine whether a seizure is an arrest, the Court asks whether a reasonable person under the circumstances would feel free to leave after being questioned. *Allen*, 73 F.3d at 235 (citing *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988)). A similar test, used in the *Miranda* line of cases when determining whether a suspect is in custody, instructs that an arrest must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances. *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004). An arrest requires probable cause, which means an officer has knowledge and/or trustworthy information sufficient to lead a reasonable person to believe there is a fair probability that the suspect committed or is committing a criminal offense. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Mere suspicion, rumor, or even a strong reason to suspect is not enough to arrest someone. *Lopez*, 482 F.3d at 1072.

If the suspected crime involves immigration, law enforcement must articulate specific facts that show the suspected immigration violation is criminal rather than civil. *Martinez-Medina v. Holder*, 673 F.3d 1029, 1035-1036 (9th Cir. 2011). Although unlawful presence may indicate an immigration crime was committed, such as illegal entry, unlawful presence can also result from non-criminal conduct such as overstaying a visa, change of student status, or acquisition of prohibited employment. *Martinez-Medina*, 673 at 1036 n. 4 (citing *Gonzales v. City of Peoria*, 722 F.2d 468, 476 (9th Cir. 1983)). For that reason, suspicion of unlawful presence does not, without more, provide a basis to detain or arrest someone because it is not a crime for a removable alien to remain present in the United States. *Martinez-Medina*, 673 at 1036.

Importantly, the officer's suspicion must be particular to the person stopped. Prefabricated or recycled profiles of suspicious behavior very likely to sweep many ordinary people into a generality of suspicious appearance will not suffice. *United States v. Rodriguez*, 976 F.2d 592, 595-596 (9th Cir. 1992). In determining reasonable suspicion or probable cause, the Court must consider all of the information under the totality of the circumstances. *Navarette*, 134 S.Ct. at 1687.

### a. Deputy Skinner

Deputy Skinner does not dispute he detained, or *Terry* stopped, Miguel the moment he began questioning him. To detain him at that point, Deputy Skinner

8

was required to have reasonable suspicion that Miguel was involved in criminal activity. *Terry*, 392 U.S. at 21-22. Deputy Skinner argues he had reasonable suspicion to detain Miguel based on sworn testimony that Miguel was "not a legal citizen." (Doc. 64 at 3-4). But Deputy Skinner cannot articulate any facts beyond that testimony which would indicate Miguel not being "a legal citizen" was the result of an illegal entry rather than the numerous other non-criminal immigration violations that may result in an alien's unlawful presence. Therefore, the undisputed facts show Deputy Skinner's *Terry* stop of Miguel was unconstitutional because "suspicion of unauthorized presence alone does not give rise to an inference that criminal activity is afoot." *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012).

Deputy Skinner's unconstitutional *Terry* stop graduated to a full blown arrest moments later. When Miguel attempted to enter the courtroom to see his wife after being questioned, Deputy Skinner blocked him, handcuffed him, and placed him in a patrol car outside. Deputy Skinner states it was not his intention to arrest Miguel, but his subjective belief is immaterial. *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295-1296 (9th Cir. 1988). A reasonable person would have understood the situation to be an arrest because Miguel was not free to leave after being questioned, was handcuffed, marched outside, and placed in a patrol car. *Allen*, 73 F.3d at 235.

9

To arrest him at that point, Deputy Skinner was required to have probable cause that Miguel had committed a criminal offense. *Lopez*, 482 F.3d at 1072. Deputy Skinner argues he had the sworn testimony, Miguel's difficulty with English, Miguel's expired Mexican consulate ID, and Miguel's inability to answer immigration questions. There are at least two problems with Deputy Skinner's argument. First, as with the sworn testimony, none of the additional facts articulated indicate Miguel committed the crime of illegal entry. At best, the articulated facts make it possible Miguel committed illegal entry, but probable cause requires more than the possibility an offense was committed. *Lopez*, 482 F.3d at 1072. Second, the argument comes dangerously close to "sweep[ing] many ordinary people into a generality of suspicious appearance." *Rodriguez*, 976 F.2d at 595-596. In a country as diverse as the United States, it is common to encounter someone who struggles with English. The Fourth Amendment would be of little value if the police were able to arrest anyone with a foreign ID and difficulty with English. And while the sworn testimony meant Deputy Skinner had slightly more than that, he still didn't have a fair probability Miguel illegally entered the country because a person who overstayed his visa, had a change of student status, or acquired prohibited employment could very likely fit precisely into that profile. *Martinez-Medina*, 673 at 1036 n. 4 (citing *Gonzales*, 722 F.2d at 476).

What Deputy Skinner needed, but never obtained, was evidence that supplied a fair probability Miguel's allegedly unlawful presence in the United States was due to illegal entry. Therefore, the undisputed facts show Deputy Skinner's arrest of Miguel was unconstitutional.

Deputy Skinner additionally argues he had reasonable suspicion and/or probable cause to detain and arrest Miguel under the collective knowledge doctrine. Under the collective knowledge doctrine, courts may impute the collective knowledge of other police officers to the officer making the stop or arrest. *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010). The doctrine applies in two situations. The first is "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007). The second occurs where an officer with direct personal knowledge of all the facts necessary to give rise to reasonable suspicion or probable cause directs or requests that another officer conduct a stop, search, or arrest. *Villasenor*, 608 F.3d at 475. Neither situation is applicable here because, other than perhaps Justice Hernandez, Deputy Skinner was not working in concert with or at the direction of other officers who had knowledge about Miguel's citizenship or immigration status when Deputy Skinner *Terry* stopped and subsequently arrested Miguel.

### b. Justice Hernandez

Justice Hernandez argues he did not violate Miguel's Fourth Amendment rights because he requested, rather than ordered, the Sheriff's Office to investigate Miguel's immigration status, which the Sheriff's Office was free to ignore. Miguel responds that at a minimum, Justice Hernandez was an integral participant in the violation of Miguel's Fourth Amendment rights.

A public official whose individual actions do not rise to the level of a constitutional violation may nonetheless be held liable under § 1983 if the official was an "integral participant" in the violation of someone's rights. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). For instance, an officer who provides armed backup during an unconstitutional search may be liable for the search, even if he did not conduct the search. *Boyd*, 374 F.3d at 780 (citing *James ex rel. James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990)); *see also Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989). Similarly, officers who participated in a search after the unconstitutional use of a flashbang grenade may be liable for the use of the flashbang if they were aware of its use, did not object, and participated in the search anyway. *Boyd*, 374 F.3d at 780.

Here, Justice Hernandez was an integral participant in the violation of Miguel's Fourth Amendment rights because Deputy Skinner detained and arrested Miguel based almost entirely on Justice Hernandez's words and direction. After a

12

witness made an unsubstantiated assertion that Miguel was "not a legal citizen," Justice Hernandez ordered his staff to "call me a deputy" because he had "two illegals sitting outside" and he "want[ed] them picked up." On the phone with the Sheriff's Office, Justice Hernandez told them to "send me a couple of deputies . . . get them here as quickly possible" because he had "two illegal immigrants out in the hallway." The Sheriff's Office understood Justice Hernandez's words to mean he had "two illegal immigrants outside his courtroom that he wants picked up." To ensure Miguel would be caught by surprise, Justice Hernandez ordered Miguel's wife to remain in the courtroom so she couldn't tell Miguel a deputy was coming for him. When Deputy Skinner arrived in the courtroom, Justice Hernandez stated the men in the hall were "illegal aliens," to which Deputy Skinner responded "I'll take care of it." Immediately thereafter Deputy Skinner detained and questioned Miguel. At no point before that did Deputy Skinner know or learn anything other than what his dispatch relayed from Justice Hernandez and what Justice Hernandez said himself. Therefore, the undisputed facts show Justice Hernandez was an "integral participant" in the unconstitutional *Terry* stop and arrest of Miguel.

### 2. Whether the constitutional right was clearly established

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Whalen*, 907 F.3d at 1153 (citing *Anderson v. Creighton*, 483 U.S. 635, 640

13

(1987)) (internal quotation omitted). The dispositive inquiry is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Whalen*, 907 F.3d at 1153 (citing *CarePartners, LLC v. Lashway*, 545 F.3d 867, 883 (9th Cir. 2008)) (internal quotation omitted). "Clearly established" requires more than a general description. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "Qualified immunity is no immunity at all 'if clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *City & Cty. Of S.F. v. Sheehan*, 135 S.Ct. 1765, 1776 (2015).

### a. Deputy Skinner

Deputy Skinner tacitly acknowledges the right was clearly established but argues *Melendres* and *Martinez-Medina* were "not founded on precedent or logic." (Doc. 65 at 20). The question before the Court is not whether the cases were correctly decided but rather whether they clearly established the law in this circuit prior to Deputy Skinner's unconstitutional *Terry* stop and arrest of Miguel. The answer is yes.

In *Martinez-Medina*, a 2011 case, a deputy sheriff detained two Mexican nationals on the suspicion they were unlawfully present in the United States. The Ninth Circuit determined the deputy unconstitutionally seized the men and moved on to analyze whether the "constitutional right was clearly established in the particular context at issue." 673 F.3d at 1034. The Ninth Circuit determined the

14

law was not clearly established at that time but concluded from that point forward "illegal presence . . . does not, without more, provide probable cause of the criminal violation of illegal entry." 673 F.3d at 1036 (citing *Gonzales*, 722 F.2d at 476-477).

A year later, the Ninth Circuit affirmed the rule clearly established in *Martinez-Medina*, stating "because mere unauthorized presence is not a criminal matter, suspicion of unauthorized presence alone does not give rise to an inference that criminal activity is afoot." *Melendres*, 695 F.3d at 1001 (citing *Terry*, 392 U.S. at 30).

*Melendres* and *Martinez-Medina* clearly established the constitutional right violated in this context because a reasonable officer would understand the very plain articulation that detaining or arresting someone based on suspicion of unlawful presence is unconstitutional. Therefore, because the undisputed facts show Deputy Skinner violated Miguel's clearly established constitutional right, Deputy Skinner is not entitled to qualified immunity and Miguel is entitled to summary judgment as a matter of law on his § 1983 claim.

### b. Justice Hernandez

Justice Hernandez argues there is no authority that prevents him from calling the sheriff to report a crime. Justice Hernandez mischaracterizes his conduct and misstates the law. Justice Hernandez did not report a crime. The undisputed facts

15

show, at a minimum, Justice Hernandez was an integral participant in the unconstitutional *Terry* stop and arrest of someone based on suspicion of unlawful presence. Next, the question is not whether Justice Hernandez violated Miguel's rights—that has already been answered. The question is whether Justice Hernandez's conduct violated a clearly established right.

A reasonable person in Justice Hernandez's shoes would understand his conduct violated Miguel's rights because *Boyd* clearly established the integral participant rule thirteen years ago and, seven years ago, *Melendres* and *Martinez-Medina* clearly established the rule against *Terry* stops and/or arrests based on suspicion of unlawful presence. A reasonable public official would understand *Boyd*, *Melendres*, and *Martinez-Medina* to mean he or she is liable if he or she is an integral participant in the detention or arrest of someone based solely on suspicion of unlawful presence. Therefore, because the undisputed facts show Justice Hernandez violated Miguel's clearly established constitutional right, Justice Hernandez is not entitled to qualified immunity and Miguel is entitled to summary judgment as a matter of law on his § 1983 claim.

### B. Punitive Damages

A jury may award punitive damages under § 1983 if a defendant's conduct was driven by evil motive or intent, was malicious or oppressive, or when it involved a reckless or callous indifference to the constitutional rights of others.

*Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005); *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). A § 1983 punitive damages claim is subject to summary adjudication when the plaintiff "fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions." *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999).

Here, disputed issues of fact preclude summary judgment on the issue of punitive damages. On one hand, a jury could reasonably infer from the words and actions of Justice Hernandez and Deputy Skinner—"I want them picked up," "get them here as quickly as possible," the phone call to ICE to see if they "wanted him," the sequestering of Miguel's wife, and the immediate detention of Miguel, to name a few—that they were oppressive or acted with callous indifference for Miguel's constitutional rights. On the other hand, a jury could reasonably infer their actions did not rise to the level of recklessness required. Summary judgment is therefore inappropriate on punitive damages.

### C. Declaratory relief

Declaratory relief is denied as redundant given the Court's conclusion Justice Hernandez and Deputy Skinner violated Miguel's rights when they detained and arrested him based solely on suspicion of illegal presence. *See National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 487 n. 5 (9th Cir. 2002)

17

(citing *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n. 2 (10th Cir. 2002)).

## IV. Conclusion and order

It is hereby ordered:

1. Miguel's motion for summary judgment (Doc. 55) is GRANTED on his § 1983 claims, but otherwise denied.

2. Justice Hernandez's motion for summary judgment (Doc. 37) is GRANTED on Miguel's request for declaratory relief, but otherwise denied.

3. Deputy Skinner's motion for summary judgment (Doc. 39) is GRANTED on Miguel's request for declaratory relief, but otherwise denied.

DATED the 29th day of May, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge